Todd E. Kennedy, Bar #6014
LIONEL SAWYER & COLLINS
300 South Fourth Street, # 1700
Las Vegas, Nevada 89101
Phone: 702.383.8965; Fax: 383-8845
E-mail: tkennedy@lionelsawyer.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL MATSIS, KISHIN KHILNANI, JO ANN PAROCHETTI, CAROLE FISHER, SASHA NIZGODA, ANTHONY CRESPO and GARY RATLIFF, as individuals, and on behalf of themselves and all other Nevada residents similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, a Japanese corporation; TOYOTA MOTOR NORTH AMERICA, INC., a California corporation; TOYOTA MOTOR SALES, U.S.A., INC., a California corporation; TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., a Kentucky corporation; FINDLAY AUTOMOTIVE OF NEVADA, LLC, d/b/a FINDLAY TOYOTA AND SCION, a Nevada limited liability company; T. WEST SALES & SERVICE, INC. d/b/a DESERT TOYOTA, SCION OF LAS VEGAS, a Nevada corporation; GK NEVADA LLC, d/b/a CENTENNIAL TOYOTA & SCION, a Nevada limited liability company; FLETCHER JONES EAST SAHARA, LTD., LLC, d/b/a FLETCHER JONES TOYOTA/SCION, a Nevada limited liability company; AAG-LAS VEGAS, LLC, d/b/a LEXUS OF LAS VEGAS, a Delaware limited liability company; and DOES I-XX,<br><br>Defendants. | Case No. _____<br><br>**NOTICE OF REMOVAL** |

Defendants Toyota Motor Corporation ("TMC"), Toyota Motor North America, Inc.

1

("TMA"), Toyota Motor Sales, U.S.A., Inc. ("TMS"), and Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") (collectively, "Toyota"), and Defendants GK Nevada LLC, d/b/a Centennial Toyota & Scion ("GK"), Fletcher Jones East Sahara, LTD., LLC, d/b/a Fletcher Jones Toyota / Scion ("Fletcher"), AAG-Las Vegas, LLC, d/b/a Lexus of Las Vegas ("AAG"), Findlay Automotive of Nevada, LLC, d/b/a Findlay Toyota and Scion ("Findlay"), and T West Sales & Service, Inc., d/b/a Desert Toyota, Scion of Las Vegas ("T West") (collectively, "Dealer Defendants") hereby jointly petition this Court for removal of this action from the District Court of Clark County, Nevada, Case No. A-10-610254-C, Department No. XIX ("State Court Action") to the United States District Court for the District of Nevada, Las Vegas Division, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446 and 1453, and in support thereof state as follows:

### I. BACKGROUND

1. On or about May 26, 2010, Plaintiffs Michael Matsis ("Matsis"), Kishin Khilnani ("Khilnani"), Jo Ann Parochetti ("Parochetti"), Carole Fisher ("Fisher"), Sasha Nizgoda ("Nizgoda"), Anthony Crespo ("Crespo") and Gary Ratliff ("Ratliff") (collectively, "Plaintiffs") commenced this putative class action by filing their Class Action Complaint ("Complaint") in the District Court of Clark County, Nevada, Case No. A-10-610254-C, Dept. No. XIX ("State Court Action").

2. The Plaintiffs' Complaint alleges that they are bringing this action "pursuant to the provisions of N.R.C.P. 23(a) and 23(b); namely, this class action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of N.R.C.P. 23." (Amended Complaint ¶ 194). In another paragraph of the Amended Complaint, the Plaintiffs define the putative class as "all persons who reside in Nevada or are Nevada citizens and who presently own and/or lease one or more of the Defective Vehicles . . . ." (Amended Complaint ¶ 192).

3. The Plaintiffs also allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) (Sixth Cause of Action, Amended Complaint at ¶ 228-244).

2

4.   This action is just one of numerous putative class actions recently filed against Toyota based on allegations concerning Toyota's recent recalls related to the issue of unintended acceleration.

5.   As of the date of filing of this notice of removal, there are more than one-hundred-ninety (190) federal class actions pending against Toyota bringing claims very similar to the ones brought in the Amended Complaint. In addition, there are approximately seventy (70) individual claims pending in federal courts related to the issue of unintended acceleration.

6.   On February 1, 2010, a petition was filed with the Judicial Panel on Multidistrict Litigation (the "Panel") seeking pretrial coordination of all pending federal cases before one United States District judge. *See In Re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Prac., and Prod. Liab. Litig.*, MDL No. 2151. The Panel convened on March 25, 2010 to determine whether the various unintended acceleration cases filed around the country were appropriate for consolidation pursuant to 28 U.S.C. § 1407. On April 9, 2010, the Panel issued a Transfer Order, initially transferring six cases to the Central District of California for coordinated or consolidated pretrial proceedings before the Honorable Judge James V. Selna. *See* Transfer Order (April 9, 2010), attached hereto as Exhibit 1. To date, the Panel has transferred one-hundred-fifty (150) related cases to the Central District of California for coordinated and consolidated proceedings in the MDL and an additional eighty-three (83) cases originally filed in the Central District of California have also been reassigned to Judge Selna for consolidated and coordinated proceedings.

7.   Service of the Summons and the Amended Complaint was made on Toyota less than thirty (30) days ago by serving Defendants' Nevada Counsel, Todd E. Kennedy, Esq. of the law firm Lionel Sawyer & Collins via stipulation on June 7, 2010. (Exhibit 2, Stipulation and Order Regarding Service of Process Deadline to Respond to Complaint and Discovery, the "Stipulation"). Based on the Stipulation, Toyota's response is not due until August 6, 2010.

8.   Service of the Summons and the Amended Complaint was also made on the Dealer Defendants less than thirty (30) days ago and their responses are not yet due.[1] Fletcher

---

[1] The Dealer Defendants have obtained stipulated extensions of time of respond. Fletcher's response to the Amended

3

was served on June 4, 2010 and by stipulation Fletcher's response to the Amended Complaint is due on or before July 23, 2010. (Exhibit 3, Proof of Service of Fletcher and Extension of Time to Respond). Findlay was served on June 4, 2010 and by stipulation Findlay's response is due on or before July 26, 2010. (Exhibit 4, Proof of Service of Findlay and Extension of Time to Respond). GK was served on June 10, 2010 and by stipulation GK's response is due on or before July 30, 2010. (Exhibit 5, Proof of Service of Centennial and Extension of Time to Respond). AAG was served on June 10, 2010 and by stipulation AAG's response is due on or before July 30, 2010. (Exhibit 6, Proof of Service of AAG and Extension of Time to Respond). T West was served on June 10, 2010 and by stipulation T West's response is due on or before July 30, 2010. (Exhibit 7, Proof of Service on T West and Extension of Time to Respond).

9. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

10. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon Defendants in Case No. A-10-610254-C are attached hereto as Exhibit 8. Exhibit 8 also includes the state court docket and the contents of the state court case file.

11. No further proceedings have occurred in this action.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1331

12. This Action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441(b) in that it includes claims that arise under 18 U.S.C. § 1962 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Amended Complaint ¶¶ 228 - 244). Accordingly, it is evident from the face of the Plaintiffs' Complaint that their claims are subject to removal to this Court. *See* 28 U.S.C. §1331; 28 U.S.C. § 1441(b).

13. Pursuant to 28 U.S.C. § 1331, federal district courts have original jurisdiction of all "civil actions arising under the Constitution, laws, or treaties of the United States." A claim

---

Complaint is due on or before July 23, 2010. Findlay's response is due on or before July 26, 2010. Centennial's, AAG's, and T West's responses are due on or before July 30, 2010.

"arises under" federal law where "the vindication of a right under state law necessarily turns on some construction of federal law." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Federal courts have jurisdiction to hear, originally or by removal, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

14.  Moreover, pursuant to 28 U.S.C. § 1367(a), this Court retains supplemental jurisdiction over the Plaintiffs' state law claims for violations of the Deceptive Trade Practices Act, for Breach of Express Warranty, for Breach of Implied Warranty of Merchantability, for Breach of Implied Warranty of Fitness for a Particular Purpose, and for Unjust Enrichment.[2] All of these state law claims are predicated upon the same facts and circumstances, and arise from the same transaction, that forms the basis of the Plaintiffs' federal claims. Specifically, in its Deceptive Trade Practices claim, the Plaintiffs allege that Toyota knowingly made false representations in the connection with the sale or lease of vehicles. (Amended Complaint ¶¶ 195 – 202).[3] Likewise, the Plaintiffs' claims for Breach of Express Warranty (*Id.* ¶¶ 205 - 206), Breach of Implied Warranty of Merchantability (*Id.* ¶¶ 212 – 213), and Breach of Implied Warranty of Fitness for a Particular Purpose (*Id.* ¶¶ 218-220) are also predicated upon these same alleged misrepresentations and false warranties made in the connection with the sale or lease of Toyota vehicles. The Plaintiffs' Unjust Enrichment claim also arises from the same alleged circumstances (*Id.* ¶¶ 224 – 225). These are the very same "false and/or misleading"

---

[2] This Court also retains supplemental jurisdiction over Plaintiffs' final claim that they are entitled to punitive damages, because punitive damages may result only if there first are compensatory damages awarded based on Plaintiffs' other claims (*Coughlin v. Hilton Hotels Corp.*, 879 F.Supp. 1047, 1050-53 (D. Nev. 1995) (holding that under Nevada law, where there has been no "award" of compensatory damages, punitive damages are not available.); *see also* NRS 42.005 (stating "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, *in addition to the compensatory damages*, may recover damages for the sake of example and by way of punishing the defendant.") (Emphasis added)).

[3] In fact, as part of Plaintiffs' Deceptive Trade Practices Claim, they also allege that Toyota violated additional federal statutes, 15 U.S.C. § 2301 *et seq.* (Magnuson Moss Warranty Act) and 49 U.S.C. 30101 *et seq.* (National Traffic and Motor Vehicle Safety Act) (Amended Complaint, ¶196(f)). These allegations provide additional basis for this Court's jurisdiction.

5

representations that the Plaintiffs allege to form the basis of their RICO claims. (*Id.* ¶¶ 231, 234, 238 - 244). Accordingly, this Court should retain supplemental jurisdiction over Plaintiffs' state law claims. *See Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, No. 2:05-cv-01532 RLH-GWF, 2008 WL 2699701, *4 (D. Nev. Jul. 2, 2008)) (holding that a federal court should have supplemental jurisdiction over state law claims where the state law claims are so related to the federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.).

### III. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332(d), 1441 AND 1453

15. This Court also has original subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") as codified at 28 U.S.C. § 1332(d).

16. CAFA provides that a federal district court shall have original jurisdiction of any civil class action in which: (A) there are 100 or more members in the plaintiff's proposed class; (B) any member of the proposed class is a citizen of a state different from any defendant; and (C) the amount placed in controversy by the claims of the class members exceeds the sum or value of $5,000,000 in the aggregate (exclusive of interest and costs). 28 U.S.C. § 1332(d). As demonstrated herein, all of these criteria are met.

#### A. CLASS ACTION CONSISTING OF 100 OR MORE MEMBERS

17. CAFA defines the term "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). This action has been filed as a state court class action "pursuant to the provisions of N.R.C.P. 23(a) and 23(b)," which is similar to Federal Civil Rule 23. (Amended Complaint ¶¶ 191-194). Accordingly, Plaintiffs' case falls within the definition of class action as contained in CAFA.

18. Plaintiffs' allege that the class includes "all persons who reside in Nevada or are Nevada citizens and who presently own and/or lease one or more of the Defective Vehicles." (Amended Complaint ¶ 192). "Defective Vehicles" are defined to include all Toyota and Lexus

vehicles that have been subject to recent recalls related to unintended acceleration and/or anti-lock brakes. (*See id.* at ¶ 39).

19. Plaintiffs themselves admit that the proposed class exceeds CAFA's 100 member requirement. They do not provide an exact number of putative class members, but allege that "[m]embership in the Proposed Class is so numerous as to make it impractical to join all members" and also that Plaintiffs believe that "the Proposed Class includes <u>tens of thousands</u> of members." (*Id.* ¶ 194(a)) (emphasis added).

20. In addition to the allegations of Plaintiffs' Amended Complaint, Toyota's records also establish that the 100 member criterion is met. Filed with this Petition is the declaration of George T. Morino, National Quality Compliance Manager for Toyota Motor Sales, U.S.A., Inc., attached hereto as <u>Exhibit 9</u>. His declaration establishes that, based upon records maintained by Toyota Motor Sales, U.S.A., Inc., 66,500 recall notices have been sent to Nevada residents for Toyota motor vehicles that are the subject of the voluntary recalls related to unintended acceleration initiated by Toyota in cooperation with the National Highway Transportation Safety Administration ("NHTSA"). (Morino Dec. at ¶¶ 6 and 11).

21. Therefore, CAFA's requirement of a minimum putative class size of 100 or more persons is satisfied based on Plaintiffs' own estimates and the number of recalled vehicles that would presumably fall within Plaintiffs' allegations.

### B. <u>DIVERSITY OF CITIZENSHIP UNDER CAFA</u>

22. Defendant TMC is and was at the time this lawsuit was commenced a corporation organized and existing under the laws of the country of Japan with its principal place of business in Japan ((*See* Amended Complaint ¶ 8) (acknowledging that TMC is "a Japanese corporation")). Defendant TMC is not now, and was not at the time the Amended Complaint was filed, a citizen of the State of Nevada within the meaning of the Acts of Congress relating to the removal of cases.

23. Defendant TMA is, and was at the time this suit was commenced, a corporation organized and existing under the laws of the state of <u>California</u> with its principal place of business in <u>New York</u>. ((*See* Amended Complaint ¶ 9) (acknowledging that TMA is "a

7

1  California corporation")). TMA is not, and was not at the time the Amended Complaint was
2  filed, a citizen of the State of Nevada within the meaning of the Acts of Congress relating to the
3  removal of cases.

4  24. Defendant TMS is, and was at the time this suit was commenced a citizen of
5  California. TMS is organized and existing under the laws of the State of California with its
6  principal place of business in California ((*Id.* ¶ 10) (acknowledging that Toyota Motor Sales,
7  U.S.A., Inc. is "a California corporation with its principal place of business located at 19001
8  South Western Avenue, Torrance, California 90501")). TMS is not, and was not at the time the
9  Amended Complaint was filed, a citizen of the State of Nevada within the meaning of the Acts of
10 Congress relating to the removal of cases.

11 25. Defendant TEMA is, and was at the time this suit was commenced a corporation
12 organized and existing under the laws of the state of Kentucky with its principal place of
13 business in Kentucky (*Id.* ¶ 11) (acknowledging that Toyota Motor Engineering &
14 Manufacturing North America, Inc. is "a Kentucky corporation with its principal place of
15 business located at 25 Atlantic Avenue, Erlanger, Kentucky 41018"). Defendant TEMA is not
16 now, and was not at the time the Amended Complaint was filed, a citizen of the State of Nevada
17 within the meaning of the Acts of Congress relating to the removal of cases.

18 26. Toyota is informed and believes that all of the named Plaintiffs are and were at
19 the time this suit was commenced, citizens of the State of Nevada. ((Amended Complaint ¶¶ 1-
20 7). ("Plaintiff MICHAEL MATSIS . . . is, and at all times material hereto was, a resident of
21 Clark County, Nevada") ("Plaintiff KISHIN KHILNANI . . . is, and at all times material hereto
22 was, a resident of Clark County, Nevada") ("Plaintiff JO ANN PAROCHETTI . . . is, and at all
23 times material hereto was, a resident of Clark County, Nevada") ("Plaintiff CAROLE FISHER . .
24 . is, and at all times material hereto was, a resident of Clark County, Nevada") ("Plaintiff
25 SASHA NIZGODA . . . . is, and at all times material hereto was, a resident of Clark County,
26 Nevada") ("Plaintiff ANTHONY CRESPO . . . is, and at all times material hereto was, a resident
27 of Clark County, Nevada") ("Plaintiff GARY RATLIFF . . . is, and at all times material hereto
28 was, a resident of Clark County, Nevada")); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d

853, 857 (9th Cir. 2001) (explaining that for the purposes of diversity jurisdiction, "[t]he natural person's state citizenship is . . . determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").

27. The diversity of citizenship between Plaintiffs and the Toyota Defendants satisfies the minimal diversity requirements of CAFA as set forth in 28 U.S.C. § 1332(d)(2), which provides that the Court shall have jurisdiction if any member of a class of plaintiffs is a citizen of a state different from any defendant.

### C. AMOUNT IN CONTROVERSY UNDER CAFA[4]

28. CAFA provides that a federal district court shall have original jurisdiction over a putative class action where the claims of the individual class members, when aggregated, exceed the sum of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6).

29. The legislative history makes it clear that § 1332(d)(6) is to be interpreted expansively. The Senate Committee states: ". . . if a federal court is uncertain about whether 'all matters in controversy' in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case. By the same token, the Committee intends that a matter be subject to federal court jurisdiction under this provision if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." 109th Congress, 1st Session, Senate Rep. 109-14, at p. 43 (February 28, 2005).

30. Applying these principles to the present case, it is clear that the amount in controversy exceeds $5,000,000, exclusive of interest and costs and that this case is properly removable to Federal Court.

---

[4] Though Defendants dispute that Plaintiffs are entitled to bring this action, vehemently deny liability, and contend that Plaintiffs can recover nothing under the claims in the Amended Complaint, for purposes of removal only, Plaintiffs' allegations and relief sought by Plaintiffs are to be considered in determining the value of the claims as pled and the amount in controversy.

### i. **Plaintiff's Causes of Action and Requests for Relief**

31. To determine whether the requisite minimum for federal jurisdiction exists, the value of *all claims* against a defendant are added together. *See, e.g., Synder v. Harris*, 394 U.S. 332, 335 (1969). Compensatory damages, punitive damages, statutorily authorized attorneys' fees, and the economic value of the rights the plaintiff seeks to protect through injunctive relief are considered in the calculation. *See Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 241 (U.S. 1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount"); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (holding that when determining amount in controversy, court could have taken into account that state discrimination claims authorized treble damages and attorney fees as well as punitive damages) (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)); *Lowerdermilk v. United States Bank, N.A.*, 479 F.3d 994, 1000 (9th Cir. 2007) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.") (quoting *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)).

32. Here, Plaintiffs' Complaint contains the following causes of action: (I) Deceptive Trade Practices; (II) Breach of Express Warranty; (III) Breach of Implied Warranty of Merchantability; (IV) Breach of Implied Warranty of Fitness for a Particular Purpose; (V) Unjust Enrichment; (VI) Violation of Racketeer Influenced and Corrupt Organizations Act; (VII) Punitive Damages. (Amended Complaint ¶¶ 195-246).

33. Plaintiffs' Amended Complaint fails to specifically set forth the amount in controversy, but they do assert that as a result of Defendants' knowingly making "false representations as to the certification of the Defective vehicles for sale or lease," knowingly making "false representations as to the characteristics, uses, and benefits of the Defective Vehicles," "knowingly fail[ing] to disclose material facts in connection with the sale or lease of the Defective Vehicles," and "fail[ing] to disclose the increased risk of SUA or braking problems in connection with the sale and/or lease of the Defective Vehicles," this resulted in "an artificial

demand for Toyota-made vehicles at a premium price." (*Id.* ¶¶ 196, 197, 199). "A vehicle with defective floor mats, accelerator pedals, ABS, or other unknown, through verifiable, defect(s), is clearly worth less than a vehicle with no potential or existing defective floor mats, accelerator pedals, ABS, or other mechanical or electrical problems." (*Id.* ¶ 200). As a result, Plaintiffs seek damages "in excess of $10,000, according to proof, including, without limitation, the refund of the entirety of the Defective Vehicles' purchase price." (*Id.* ¶ 202(a)). In addition, Plaintiffs seek costs and reasonable attorneys' fees, treble damages, and "[d]isgorgement of all profits made by Defendants as a result of committing one or more unfair and/or deceptive trade practice(s)[.]" (*Id.* ¶ 202).

34. Further, Plaintiffs' Amended Complaint asserts that as a result of Toyota's breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose, Plaintiffs and members of the Proposed Class have suffered damages, namely "a diminution in the value of their vehicles and/or non-use of their vehicles, pending successful repair, in addition to any costs associated with purchasing safer vehicles, incidental and consequential damages, and any other damages allowable under law." (*Id.* ¶¶ 208, 215, 222).

35. Plaintiffs also assert that "Defendants should pay restitution to Plaintiffs and Members of the Proposed Class in a manner established by the Court," to prevent Toyota from being unjustly enriched. (*Id.* ¶ 227).

36. Plaintiffs also assert that as a proximate result of the alleged pattern of racketeering activity engaged in by TMC, TMA, TMS and TEMA, "Plaintiffs and Members of the Proposed Class have suffered damage to their property interests, including, without limitation, decreased value to their Toyota-made vehicles, excessive payments made on dangerously defective vehicles, repair costs, increased insurance deductibles and insurance premiums, and the cost of loaner or replacement vehicles, and therefore, are entitled to recover threefold said damages" in addition to costs and attorneys' fees. (*Id.* ¶ 244).

37. Plaintiffs further allege that the "acts and/or omissions of Defendants are characterized by fraud, oppression, or malice, express or implied, entitling Plaintiffs and

11

1  Members of the Proposed Class to punitive damages." (*Id.* ¶ 246).

2  38. Plaintiffs' Complaint concludes by praying for a multitude of remedies including damages in excess of $10,000 under each of the seven (7) causes of action, treble damages, all profits made by Toyota from the sale and/or lease of the Defective Vehicles in the State of Nevada, and attorneys' fees and costs. (*Id.* Prayer for Relief).

39. As explained below, the amount of relief requested by these allegations is sufficient to exceed the minimum amount in controversy requirement of CAFA.

### ii. Collectively, the Damage Allegations Easily Exceed the Threshold

40. While Toyota disputes that Plaintiffs are entitled to any of the damages sought in their Amended Complaint, for purposes of determining the aggregate amount placed in controversy under CAFA, it is clear that Plaintiffs' allegations, if accepted without exception, would exceed the threshold.

41. There are 66,500 vehicles at issue in Nevada that are subject to voluntary safety recalls conducted by Toyota related to the issue of unintended acceleration. (Morino Dec. ¶ 6, 11). Using even this limited sample size,[5] Plaintiffs and putative class members who seek a refund of the full purchase price of their vehicles (Amended Complaint at ¶ 202(a)), would only need to seek relief of $75.18 per vehicle in order to satisfy the jurisdictional threshold of CAFA.[6] If Plaintiffs' treble damages claims under the Nevada Deceptive Trade Practices Act, *see* N.R.S. § 598.0903 *et seq.*, are accepted, that would decrease the base damages to roughly $25.06 per class member to satisfy the CAFA threshold. In other words, any asserted damages or equitable relief that exceeds a *de minimus* amount would satisfy CAFA.

---

[5] The Amended Complaint also contains claims related to the ABS recall and the potential for defective electronic throttle control systems. (*See* Amended Complaint at ¶¶ 72, 82-84). The calculations contained in these removal papers, however, are based solely on those vehicles that are subject to either the September 29, 2009 floor mat recall referenced in Amended Complaint ¶ 64 ("September Recall") or the January 21, 2010 pedal recall referenced in Amended Complaint ¶ 66 ("January Recall"). Although the Amended Complaint potentially relates to significantly more vehicles, given that the gravamen of Plaintiffs' claims stems from the alleged dangers associated with the risk of unintended acceleration and that Toyota has accurate and verified figures for both the number of these vehicles and the costs of performing various remedies on them, Toyota is using these numbers to calculate the amount placed in controversy to insure that the amount in controversy is accurately calculated. If the ABS recall vehicles and ETCS vehicles were included, the amount in controversy would be significantly greater.

[6] $5,000,000 divided by the 66,500 Recalled Vehicles equals $75.18.

42. Plaintiffs' request for the disgorgement of all profits made by Defendants as a result of "committing one or more unfair and/or deceptive trade practice(s)," and Plaintiffs' breach of express warranty, breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose claims also easily put more than $5,000,000 in controversy.

43. Plaintiffs' allege that they and the putative Class Members have "suffered damages as a result of the breach; namely, a diminution in the value of their vehicles and/or non-use of their vehicles, pending successful repair, in addition to any cost associated with purchasing safer vehicles, incidental and consequential damages." (Amended Complaint ¶¶ 208, 215 and 222). Presumably, the calculation of the diminished value of their vehicles or the unjust enrichment of the defendants would include the cost to correct the alleged defects. In the present case, the cost of remedying the floor mat and accelerator pedal issues and installing a brake override system for Nevada Toyota and Lexus owners would exceed $6,952,500 – far more that CAFA's jurisdictional threshold.[7]

44. Plaintiffs also contend that they and the putative Class Members suffered damages resulting from their inability to use their vehicles while the recall remedies were being implemented. (Amended Complaint ¶¶ 208, 215 and 222). Toyota has agreed to reimburse its independent dealerships $35.00 a day for the use of a loaner or rental vehicle provided to customers scheduling the recall remedies and brake override upgrades. (Morino Dec. ¶ 17). Thus, assuming it takes less than one day to fix Recalled Vehicles, the amount in controversy to provide alternative transportation is at least an additional $2,327,500.[8]

45. Plaintiffs also pray for "costs and reasonable attorneys' fees." (Amended Complaint Prayer for Relief). This may also be considered for purposes of calculating the

---

[7] The cost of implementing the September Floor Mat Recall for Nevada residents was approximately $4,410,000 (1 hour of repair time on each of 49,000 vehicles at a repair rate of $90/hour) (*See* Morino Dec. at ¶¶ 6 – 7). The cost of implementing the January Pedal Recall for Nevada residents was approximately $1,102,500 (seven-tenths of an hour of repair time on each of 17,500 vehicles at a repair rate of $90/hour) (*Id.* at ¶¶ 7, 11-12). The cost of implementing the Brake Override Upgrade for Nevada residents was approximately $1,440,000 (half an hour of repair time on each of 32,000 vehicles at a repair rate of $90/hour) (*Id.* at ¶¶ 7, 15-16).

[8] Toyota has demonstrated that there are 66,500 Recalled Vehicles; 66,500 times $35 equals $2,327,500.

$5,000,000 amount placed in controversy under CAFA. *See, e.g., Lowerdermilk*, 479 F.3d at 1000.

46. As a reference point for awards of attorneys' fees in class actions, the Federal Judicial Center conducted a study in 1994-95 entitled "Empirical Study of Class Actions in Four Federal District Courts." The study found that the median rates for attorneys' fees ranged from 27% to 30% of the recovery for all class actions resolved over a four year period in the four selected district courts. FJC-R-96-2. This would decrease the amount required per class member to meet the jurisdictional threshold from $75.18 to $54.88 (or from $25.06 to $18.29 if assuming treble damages under the Nevada Deceptive Trade Practices Act).

47. Defendants contend that the named Plaintiffs and the proposed Class Members are not entitled to any relief; however, given the size of the proposed class and the breadth of the relief sought, the amount placed in controversy by this litigation far exceeds the $5,000,000 requirement for CAFA jurisdiction.

**D. NO CAFA EXCEPTIONS APPLY**

48. Although CAFA has provisions under which the District Court may or shall decline jurisdiction, no statutory exception to CAFA jurisdiction applies in this case.[9] 28 U.S.C. § 1332(d)(3) and (4).

49. Section 1332(d)(3) (the "interest of justice" exception) does not apply because, among other reasons, the primary defendants, Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales U.S.A., Inc. and Toyota Motor Engineering & Manufacturing North America, Inc., (the "Primary Defendants")[10] are not citizens of the state where this action

---

[9] Plaintiff bears the burden of proving that an exception to CAFA jurisdiction applies. *See Serrano v. 180 Connect, Inc.*, 478 F. 3d 1018 (9th Cir. 2007); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006); *Frazier v. Pioneer Ams., LLC*, 455 F.3d 542, 546 (5th Cir. 2006); *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 680-681 (7th Cir. 2006); *Kendrick v. Standard Fire Ins. Co.*, 2007 U.S. Dist. LEXIS 28461, at *4, (E.D. Ky. 2007); *Proffitt v. Abbott Labs.*, No 2:08-cv-151, 2008 WL 4401367, at *3 (E.D. Tenn. Sept. 23, 2008). The legislative history of CAFA also supports that position.

[10] TMC, TMA, TMS and TEMA are the "Primary Defendants" because the Plaintiffs' allegations and causes of action are primarily based on the alleged activities of these four entities, rather than on the activities of the Dealer Defendants (*See* Amended Complaint, ¶¶ 195- 244). Moreover, the relief requested by the Plaintiffs is requested "against Toyota" (*See Id.* Prayer for Relief ¶ 2 -11), as opposed to against the specific automotive dealerships.

was originally filed and more than two-thirds of the proposed plaintiff class are citizens of Nevada.

50. Section 1332(d)(4)(A) (the "local controversy exception") similarly does not apply because the defendants "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted," i.e., the Primary Defendants, are not citizens of Nevada, and the "principal injuries resulting from the alleged conduct," i.e., the sale of Toyota and Lexus vehicles, occurred in all fifty states, not only Nevada.[11] Additionally, numerous class actions asserting the same or similar allegations have been filed against Toyota on behalf of the same persons during the three-year period preceding the filing of this class action, as demonstrated by the one-hundred-fifty (150) related class actions that have already been transferred to the Central District of California for pretrial coordination. The Plaintiffs certainly cannot meet the burden of showing that "*no* other class action has been filed asserting the same or similar factual allegations against *any* of the defendants on behalf of the same *or other persons*" ((28 U.S.C. § 1332(d)(4)(A)(ii) (emphasis added)). Without such a showing, the local controversy exception does not apply.

51. Section 1332(d)(4)(B) (the "home state exception") does not apply because, among other reasons, the Primary Defendants are not citizens of the state where this action was

---

[11] The legislative history for this section of CAFA, demonstrates the Committee's its intent that cases such as the one at issue should be removable. Specifically, the Committee provided the following example of a case that would be exempted from the provisions of § 1332(d)(4):

> A class action is brought in Florida against an out-of-state automobile manufacturer and a few in-state dealers, alleging that a certain vehicle model is unsafe because of an allegedly defective transmission. The vehicle model was sold in all fifty states but the class action is only brought on behalf of Floridians. This case would not fall within the Local Controversy Exception for two reasons. First, the automobile dealers are not defendants whose alleged conduct forms a significant basis of the claims or from whom significant relief is sought by the class. Even if the plaintiffs are truly seeking relief from the dealers, that relief is just small change compared to what they are seeking from the manufacturer. Moreover, the main allegation is that the vehicles were defective. In product liability cases, the conduct of a retailer such as an automobile dealer does not form a significant basis for the claims of the class members. Second, the case falls outside the Local Controversy Exception because the "principal injuries resulting from the alleged conduct,"— i.e., selling a vehicle with a defective transmission — were incurred in all fifty states. The fact that the suit was brought as a single-state class action does not mean that the principal injuries were local. In other words, this provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct—not just where the proposed class members were injured. Thus, any defendant could remove this case to federal court.

15

1  originally filed.[12]

2  52.  This action is not one described in 28 U.S.C. § 1332 or § 1453 as being non-removable.

## IV. VENUE

53.  Venue of this removal action is proper under 28 U.S.C. § 1441(a) because this Court is the United States District Court for the district and division corresponding to the place where the State Court Action was pending.

54.  This action is not an action described in 28 U.S.C. § 1445.

55.  Pursuant to 28 U.S.C. § 1446(d), a true and accurate copy of this Notice of Removal and exhibits is being served on counsel for the Plaintiffs and is being filed with the Clerk of Court for the District Court for Clark County, Nevada.

WHEREFORE, Defendants respectfully remove this action from the District Court of Clark County, Nevada to the United States District Court for the District of Nevada as provided by law.

Respectfully submitted this 1st day of July, 2010,

LIONEL SAWYER & COLLINS

By: _____
Todd E. Kennedy, Bar #6014
300 South Fourth Street, #1700
Las Vegas, Nevada 89101

***Attorneys for Defendants***

---

[12] Again, the Plaintiffs bear the burden of proving that an exception to CAFA jurisdiction applies. *See Serran.*, 478 F. 3d 1018; *Evans*, 449 F.3d at 1164; *Frazier*, 455 F.3d at 546; *Hart*, 457 F.3d at 680-681; *Kendrick*, 2007 U.S. Dist. LEXIS 28461, at *4; *Proffitt v. Abbott Labs.*, No 2:08-cv-151, 2008 WL 4401367, at *3. Plaintiffs have offered no evidence to show that the Primary Defendants are citizens of Nevada, and therefore the home state exception does not apply.

**CERTIFICATE OF SERVICE**

I certify that I have this day served a true and correct copy of the within and foregoing **NOTICE OF REMOVAL** upon all parties to this matter by placing a copy of same in the United States Mail with adequate postage addressed as follows:

> Dennis L. Kennedy
> Joshua P. Gilmore
> BAILEY & KENNEDY
> 8984 Spanish Ridge Avenue
> Las Vegas, Nevada 89148-1302

I have this day also electronically filed the foregoing **NOTICE OF REMOVAL** with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filling to all counsel of record.

This 1st day of July, 2010.

_____
An Employee of Lionel Sawyer & Collins

17